No. 23-35294

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

STATE OF WASHINGTON, ET AL.,

*Plaintiffs-Appellees,*

*v.*

UNITED STATES FOOD AND DRUG ADMINISTRATION, ET AL.,

*Defendants-Appellees,*

*v.*

STATE OF IDAHO, ET AL.

*Movants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of Washington

No. 1:23-cv-03026-TOR
The Honorable Thomas O. Rice

## OPENING BRIEF OF APPELLANT

RAÚL R. LABRADOR
 *Attorney General*

Idaho Office of the Attorney General
700 W. Jefferson St.
Suite 210
Boise, ID 83720
(208) 334-2400
josh.turner@ag.idaho.gov

THEODORE J. WOLD
 *Solicitor General*

JOSHUA N. TURNER
 *Deputy Solicitor General*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

JURISDICTIONAL STATEMENT ........................................................................................ 2

ISSUES PRESENTED ......................................................................................................... 3

STATEMENT OF THE CASE ............................................................................................. 4

SUMMARY OF THE ARGUMENT ...................................................................................... 7

STANDARD OF REVIEW .................................................................................................. 8

ARGUMENT ..................................................................................................................... 9

I. State Intervenors Have A Right To Intervene Under Rule 24(a)(2) ......................... 9

   A. State Intervenors established a significantly protectable interest ........................ 10

   B. State Intervenors establish the remaining intervention factors ........................... 15

   C. State Intervenors have standing to intervene ...................................................... 17

II. State Intervenors Should Also Be Allowed To Intervene Under Rule 24(b) ......... 19

CONCLUSION ................................................................................................................. 21

# TABLE OF AUTHORITIES

## CASES

*Arakaki v. Cayetano,*
  324 F.3d 1078 (9th Cir. 2003) ................................................................. 8, 16

*California ex rel. Lockyer,*
  450 F.3d 436 (2006). .............................................................. 12, 13, 15, 16

*California v. Tahoe Reg'l Plan. Agency,*
  792 F.2d 775 (9th Cir. 1986) ....................................................................... 16

*California v. Trump,*
  963 F.3d 926 (9th Cir. 2020) ................................................................. 18, 19

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
  647 F.3d 893 (9th Cir. 2011) .............................................................. 8, 10, 12

*Donnelly v. Glickman,*
  159 F.3d 405 (9th Cir. 1998) ............................................................. 2, 8, 11

*Freedom from Religion Found., Inc. v. Geithner,*
  644 F.3d 836 (9th Cir. 2011) ...................................................................... 19

*Fresno County v. Andrus,*
  622 F.2d 436 (9th Cir. 1980) ...................................................................... 10

*Fund for Animals, Inc. v. Norton,*
  322 F.3d 728 (D.C. Cir. 2003) ................................................................... 14

*Greene v. United States,*
  996 F.2d 973 (9th Cir. 1993) ...................................................................... 20

*Hinojos v. Kohl's Corp.,*
  718 F.3d 1098 (9th Cir. 2013) .................................................................... 19

*Kalbers v. United States Dep't of Just.,*
  22 F.4th 816 (9th Cir. 2021) ...................................................................... 15

*Kentucky v. Biden,*
  23 F.4th 585 (6th Cir. 2022) ...................................................................... 18

*League of United Lat. Am. Citizens v. Wilson,*
  131 F.3d 1297 (9th Cir. 1997) ...................................................................... 8

*Leonard v. Clark*,
12 F.3d 885 (9th Cir. 1993) ........................................................................ 17

*Mandan, Hidatsa & Arikara Nation v. United States Dep't of the Interior*,
66 F.4th 282 (D.C. Cir. 2023) .................................................................... 13

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) ...................................................................... 7

*Massachusetts v. EPA*,
549 U.S. 497 (2007) ..................................................................................... 19

*Natl. Res. Defense v. U.S.*,
542 F.3d 1235 (9th Cir. 2008) .................................................................... 18

*Natural Res. Def. Council v. Costle*,
561 F.2d 904 (1977) ..................................................................................... 14

*Oregon v. Legal Servs.*,
552 F.3d 965 (9th Cir. 2009) ...................................................................... 18

*Paulsen v. Daniels*,
413 F.3d 999 (9th Cir. 2005) ...................................................................... 14

*Perry v. Proposition 8 Off. Proponents*,
587 F.3d 947 (9th Cir. 2009) ...................................................................... 20

*Smith v. L.A. Unified Sch. Dist.*,
830 F.3d 843 (9th Cir. 2016) ...................................................................... 15

*Spangler v. Pasadena City Bd. of Educ.*,
552 F.2d 1326 (9th Cir. 1977) .................................................................... 21

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ...................................................................... 4

*Town of Chester v. Laroe Ests., Inc.*,
581 U.S. 433 (2017) ..................................................................................... 17

*Traxler v. Multnomah County*,
596 F.3d 1007 (9th Cir. 2010) .................................................................... 21

*United States v. City of Los Angeles*,
288 F.3d 391 (9th Cir. 2002) ................................................................ 11, 15

*United States v. Oregon*,
   839 F.2d 635 (9th Cir. 1988) .................................................................... 14

*Venegas v. Skaggs*,
   867 F.2d 527 (9th Cir. 1989) .................................................................... 20

*Western Watersheds Project v. Haaland*,
   22 F.4th 828 (9th Cir. 2022) .............................................................. 8, 9, 11

*Wilderness Soc. v. U.S. Forest Service*,
   630 F.3d 1173 (9th Cir. 2011) ............................................................... 7, 10

**STATUTES**

21 U.S.C. § 355-1 ................................................................................................ 4

28 U.S.C. § 1331 ................................................................................................ 2

**OTHER AUTHORITIES**

7A Charles Alan Wright et al., *Federal Practice & Procedure* (3d ed. 2018) .................. 9, 21

## INTRODUCTION

In the district court, the States of Idaho, Iowa, Montana, Nebraska, South Carolina, Texas, and Utah ("State Intervenors") moved to intervene in a lawsuit commenced by 17 other states and the District of Columbia ("Plaintiffs"). The Plaintiffs' lawsuit challenges an action by the United States Food and Drug Administration. State Intervenors proposed to bring the same claims against the same defendants to challenge the same agency action.

State Intervenors could have filed a separate suit in another district court. But doing so would have made no sense. A separate lawsuit would mean unnecessary strain on judicial resources and inefficiency for the parties (particularly the Federal Defendants). A separate suit also raises the specter of inconsistent final judgments. Fortunately, Federal Rule of Civil Procedure 24 provides a mechanism to avoid those symptoms of superfluous litigation. And State Intervenors' motion to intervene should have been a routine example of Rule 24 intervention.

Surprisingly, the district court disagreed. It denied intervention based on an overly restrictive interpretation of Rule 24. Left uncorrected, that restrictive approach threatens to erode the oft-repeated policy of this Court to broadly construe Rule 24 in favor of intervention. To be sure, State Intervenors' case for intervention is strong enough to need no benefit of the doubt. But when the liberal approach is applied here, the district court's decision is indefensible and requires reversal.

## JURISDICTIONAL STATEMENT

On March 9, 2023, Plaintiffs filed an Amended Complaint that asserted claims under federal law. *See* 2-ER-202–300. The district court thus had subject-matter jurisdiction under 28 U.S.C. § 1331. On March 30, 2023, Appellants moved to intervene in the action under Federal Rule of Civil Procedure 24. *See* 2-ER-061–71. On April 21, 2023, the district court denied Appellants' motion to intervene. *See* 1-ER-002–09. On April 26, 2023, Appellants timely appealed the district court's denial of intervention. *See* 3-ER-433–441.

This Court has jurisdiction to review the district court's order because the denial of a motion to intervene as of right is a "final decision." *See Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (citation omitted). This Court also has jurisdiction over a district court's denial of permissive intervention to the extent it finds that the district court abused its discretion. *Id.* at 411.

## ISSUES PRESENTED

I.     The State Intervenors moved to intervene as of right under Rule 24, proposing to bring the same claims the Plaintiffs asserted against the same defendants. Their interests were not adequately represented by any party, and their motion to intervene was timely. But the district court denied the motion on the sole ground that the State Intervenors lacked a significant protectable interest. Did the State Intervenors have a right to intervene?

II.    The district court also denied the State Intervenors' motion for permissive intervention based on an incorrect view of the commonality requirement. Did the district court err?

## STATEMENT OF THE CASE

The underlying litigation in this case is about the United States Food and Drug Administration's marketing restrictions on a drug generically known as mifepristone. But this appeal is about the much narrower issue of intervention under Federal Rule of Civil Procedure 24. There is overlap between the two, and so State Intervenors discuss some facts related to the FDA's approval of mifepristone. Because this Court accepts a proposed intervenor's well-pleaded allegations as true, the following facts are taken from State Intervenors' proposed Complaint. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819-20 (9th Cir. 2001).

In 2000, the FDA determined that mifepristone could not be safely marketed without restrictions that were designed to mitigate the serious dangers posed by the drug. 2-ER-073 ¶ 1. The law required those restrictions on use—known as a Risk Evaluation and Mitigation Strategy ("REMS")—"to ensure that the benefits of the drug outweigh the risks of the drug." 21 U.S.C. § 355-1(a)(1). From 2000 to 2023, the mifepristone REMS required mifepristone to be (1) prescribed by a certified health care provider; (2) dispensed in person at an approved facility by a certified provider; and (3) dispensed to patients alongside execution of a Prescriber Agreement Form and Patient Agreement Form. 2-ER-077 ¶ 26.

On January 3, 2023, the FDA revised mifepristone's REMS without following the Administrative Procedure Act's notice and comment requirements. *Id.* ¶¶ 31–32. It reaffirmed its position that mifepristone is a dangerous drug requiring a REMS, but it

eliminated the in-person dispensing requirement from mifepristone's REMS. *Id.* The 2023 REMS now allow pharmacies to fill mifepristone prescriptions and patients to obtain and take the drug without any in-person contact with the prescribing physician. *Id.*

On February 23, 2023, Plaintiffs (then comprised of 12 states) challenged the FDA's January 3 final agency action. 3-ER-346–432. They sued the FDA, the United States Department of Health and Human Services, and Robert M. Califf and Xavier Becerra in their official capacities. *Id.* Plaintiffs also moved for a preliminary injunction to maintain the "status quo." 3-ER-302–345. They asked the district court to enjoin the Federal Defendants from enforcing the 2023 REMS and from changing the status quo to make mifepristone less available in their states. 2-ER-156.

On March 9, 2023, Plaintiffs filed an Amended Complaint, adding 7 more states and the District of Columbia as named plaintiffs. 2-ER-202–300. Plaintiffs assert four claims in their Amended Complaint: Claims I–III allege violations of the APA and Claim IV alleges an equal protection clause violation. *Id.* ¶¶ 257–69. In each of their APA claims, Plaintiffs allege that the "FDA's promulgation of the mifepristone 2023 REMS was a final agency action," which they asked the district court to "hold unlawful and set aside." *Id.* ¶¶ 258, 259, 262, & 265.

On March 30, 2023, the States of Idaho, Iowa, Montana, Nebraska, South Carolina, Texas, and Utah ("State Intervenors") moved to intervene and filed a proposed Complaint in intervention. *See* 2-ER-061–71 & 072–137. Like Plaintiffs, State

Intervenors sued the FDA, HHS, and Robert M. Califf and Xavier Becerra in their official capacities. 2-ER-072–137. Also like Plaintiffs, State Intervenors assert three APA claims challenging the FDA's January 3 final agency action. *Id.* ¶¶ 92–107. And again just like Plaintiffs, State Intervenors allege that "[t]he FDA's promulgation of the mifepristone 2023 REMS was a final agency action" and that it should be held "unlawful" and "set aside." *Id.* ¶¶ 93, 98, & 104.

At the same time State Intervenors' motion to intervene was pending, the district court considered Plaintiffs' preliminary injunction motion. On April 7, 2023, the district court granted in part Plaintiffs' motion for a preliminary injunction. 2-ER-030–60. The Federal Defendants mostly opposed Plaintiffs' motion on standing grounds, arguing in part that Plaintiffs lacked an Article III injury. 2-ER-183–87. The district court rejected that argument, finding that "Plaintiffs have shown a reasonably probable threat to their economic interests in the form of unrecoverable costs that are fairly traceable to the 2023 REMS, which are allegedly in violation of the APA." 2-ER-043. As to irreparable injury, the district court also found that the 2023 REMS would irreparably injure Plaintiffs. *Id.* at 22–24. Those holdings are curious because later, when the district court turned to providing relief, it enjoined the Federal Defendants from modifying the 2023 REMS before final judgment. *Id.* at 27. The district court order's net result found the 2023 REMS likely unlawful and relied on them for standing and irreparable injury purposes but still refused to return the parties to the status quo ante—the pre-2023 REMS.

*Cf. Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009).

On April 21, 2023, the district court denied State Intervenors' motion to intervene. This appeal followed.

## SUMMARY OF THE ARGUMENT

The Federal Rules of Civil Procedure have liberalized intervention with the goal of "involving as many apparently concerned persons as is compatible with efficiency and due process." *Wilderness Soc. v. U.S. Forest Service*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc). The Rules no longer look dimly on intervention. With the 1966 amendments, the Rules inaugurated a "liberal policy in favor of intervention." *Id.* A proper application of Rule 24 leads to "broadened access to the courts" and "efficient resolution of issues"—quite different than the district court's stingy view that needlessly multiplies litigation.

Rule 24 is not just a repackaging of Rule 19. It presents a much lower bar to joining a lawsuit, and State Intervenors have satisfied its relaxed requirements. They have claimed an interest related to the subject of the underlying litigation. Indeed, their interest in lawful mifepristone REMS is the very question at issue in the underlying litigation. As to the other factors, their motion was timely; the outcome of the litigation may impair their interests; and no party will adequately represent their interests. Under Rule 24(a), they have a right to intervene.

State Intervenors should also be allowed to intervene permissively under Rule

24(b). Their proposed Complaint raises the same claims against the same defendants related to the same agency action. The commonality requirement is easily satisfied. Their participation will also not prejudice or unduly delay the proceedings. Intervention here is not just permitted—it exemplifies the purpose of Rule 24's liberal policy.

Accordingly, the district court's decision should be reversed.

## STANDARD OF REVIEW

Intervention under Federal Rule of Civil Procedure 24 is favored. *Western Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022). Thus, courts give Rule 24 a "liberal construction in favor of applicants for intervention." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). On top of that, this Court's "review is guided primarily by practical considerations, not technical distinctions." *Western Watersheds*, 22 F.4th at 835.

This Court takes a fresh look at State Intervenors' Rule 24 motion and reviews the district court's intervention-as-of-right ruling de novo. *League of United Lat. Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). It reviews the district court's permissive-intervention ruling for an abuse of discretion. *Donnelly*, 159 F.3d at 411. The Court does not need to reach the issue of permissive intervention if it determines "that intervention as of right was improperly denied." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 896 (9th Cir. 2011).

# ARGUMENT

## I. State Intervenors Have A Right To Intervene Under Rule 24(a)(2).

State Intervenors moved to intervene in the district court because that was the most appropriate place for them to bring their claims against the Federal Defendants. It was where 17 other states and the District of Columbia had sued the same defendants for the same violations, so there was no forum more sensible to litigate State Intervenors' identical claims. It is also where Rule 24 gives them a right to intervene.

Rule 24(a)(2) provides a nonparty the right to intervene when it "(i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties." *Western Watersheds*, 22 F.4th at 835 (citation omitted). Those four factors reflect the 1966 amendment's liberalizing changes to Rule 24. 7A Charles Alan Wright et al., *Federal Practice & Procedure* § 1779 (3d ed. 2018) ("The 1966 amendments . . . significantly enlarged the right to intervene under Rule 24."). Before, courts narrowly construed the right to intervene, and their analysis turned on legal technicalities. *Id.* § 1908.2. Now, intervention is broadly construed in favor of intervention and "guided primarily by practical considerations." *Berg*, 268 F.3d at 818. The district court's decision conflicts with those important reforms.

Because State Intervenors satisfy each of the four intervention factors, the Court should reverse and remand with instructions to permit intervention.

**A. State Intervenors established a significantly protectable interest.**

Plaintiffs sued the Federal Defendants to ensure that the REMS governing mifepristone's marketing are lawful. That is the same interest State Intervenors claim on intervention. Like Plaintiffs, State Intervenors believe the 2023 REMS violate the APA. Their interest "is protectable under some law"—the APA—and "there is a relationship between the legally protected interest and the claims at issue." *Citizens for Balanced Use*, 647 F.3d at 897. Nothing more is required for this "threshold" inquiry. *Fresno County v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980).

But the district court imposed a different standard. It acknowledged that State Intervenors and Plaintiffs both "assert APA claims against the FDA relating to the 2023 Mifepristone REMS Program." 1-ER-006. Yet it held that State Intervenors' claims—"[a]s a practical matter"—were not at issue because State Intervenors challenged an aspect of the 2023 REMS that Plaintiffs did not. *Id.* That holding is factually and legally wrong and marks a clear departure from this Court's Rule 24 analysis.

*First*, intervention does not depend on such technical alignment. For Rule 24 purposes, there is a strong policy that intervention should be granted to "as many apparently concerned persons as is compatible with efficiency and due process." *Wilderness Soc.*, 630 F.3d at 1179. The interest test is intended to dispose of lawsuits—not multiply them—by involving parties that claim a protectable interest. *Andrus*, 622 F.2d at 438. The inquiry is "practical" and tilts in favor of intervention to "prevent or simplify future

10

litigation involving related issues." *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (citation omitted).

Intervention here serves these purposes. While State Intervenors could assert the same APA claims against the same Federal Defendants over the same final agency action in a different court, that would be inefficient and contrary to the purpose of Rule 24. The district court effectively disqualified State Intervenors because their interest differed in some respects from Plaintiffs' interest. But that difference is not an intervention *defect;* it's an intervention *demand*. State Intervenors' interest must be distinct enough to render Plaintiffs inadequate representatives of the interest. *See Western Watersheds*, 22 F.4th at 840-41. The district court's interest analysis cannot be squared with this Court's liberal policy "mandating broad construction." *Id.* at 835.

**Second**, the district court cannot rely on *Donnelly*. *See* 1-ER-006. The Court denied intervention in *Donnelly* because the proposed intervenors sought to inject new, male-based sex discrimination claims into a class action that had certified a female-only class. *Donnelly*, 159 F.3d at 408–10. Nothing about the resolution of the female plaintiffs' claims would have affected the proposed intervenors' claims. *Id.* at 410. That is not the case here. State Intervenors and Plaintiffs are challenging the same final agency action, and what the district court says about that agency action will impact State Intervenors. Plaintiffs' success or failure against the 2023 REMS will directly impact what REMS govern the marketing of mifepristone *everywhere*. There is no way around it: State

Intervenors "will suffer a practical impairment of [their] interests as a result of the pending litigation." *See California ex rel. Lockyer*, 450 F.3d 436, 441 (2006).

The decisions in *Citizens for Balanced Use* and *Lockyer* are better analogs. In *Citizens for Balanced Use*, the plaintiffs brought an APA challenge to a federal regulation that restricted vehicle use in Gallatin National Forest. *Citizens for Balanced Use*, 647 F.3d at 895. This Court permitted conservation groups to intervene based on their "interest in conserving and enjoying the wilderness character" of the national forest—an area that the challenged regulation impacted. *Id.* at 897. The same is true here. The 2023 REMS apply to Plaintiffs and State Intervenors alike, just like the federal regulation governing Gallatin National Forest applied to plaintiffs and the conservation groups in *Citizens for Balanced Use*. Any challenge to the 2023 REMS will impact State Intervenors.

Similarly, in *Lockyer*, California challenged a federal law that conditioned certain federal funding on states not discriminating against health care providers for refusing to perform abortions. *Lockyer*, 450 F.3d at 439. The Court permitted health care providers to intervene because they had a sufficient interest in the federal law continuing to dissuade states from discrimination. *Id.* at 441. This was true even though the federal law provided intervenors with no "enforceable rights." *Id.* State Intervenors also have an interest in federal law being enforced, but here even more so than the intervenors in *Lockyer* because the APA provides State Intervenors with enforceable rights.

***Third***, the district court improperly dismissed impairment of the State Intervenors' interest. Practical impairment is strong proof of a sufficient interest. As this Court

explained in *Lockyer*, "a party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Id.* The practical impairment to State Intervenors is not difficult to foresee. Plaintiffs hope to eliminate mifepristone's REMS altogether. If successful, that judgment would apply to mifepristone's availability nationally. And even were it confined to Plaintiffs' borders, State Intervenors' interests would still be impaired. As Plaintiffs admit, eliminating the REMS impacts State Intervenors' ability to enforce their laws and the safeguards available to protect their citizens. 2-ER-244–45, 270 at ¶¶ 130, 185.

The district court disagreed and said that "this case will not impair State Intervenors' ability to enforce their own state laws regulating medication abortion." 1-ER-007. But that errs twice. First, the "district court is required to accept as true the non-conclusory allegations made in support of an intervention motion." *Berg*, 268 F.3d at 819; *see also Mandan, Hidatsa & Arikara Nation v. United States Dep't of the Interior*, 66 F.4th 282, 285 (D.C. Cir. 2023) ("[T]here is no requirement that the movant 'demonstrate' the interest, if 'demonstrate' means, as it often does, 'prove.' All that is required is a 'claim.'"). It was improper for the district court to reject State Intervenors' claims related to impairment of interest.

Next, State Intervenors' interest in enforcing their laws is not the only—or even the principal—interest threatened with impairment. State Intervenors have an interest in mifepristone's in-person dispensing requirement being restored. Plaintiffs want the opposite. It isn't difficult to see that a future decision from the district court or this

Court may impair or impede State Intervenors' interest. In this Circuit, "such a stare decisis effect is an important [impairment] consideration." *United States v. Oregon*, 839 F.2d 635, 638-39 (9th Cir. 1988) (citing precedents "recognizing practical limitations on the ability of intervention applicants to protect interests in the subject of the litigation after court-ordered equitable remedies are in place"). And State Intervenors need not prove that they would be unable to vindicate their interests in a separate lawsuit. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) ("[I]t is not enough to deny intervention under 24(a)(2) because applicants may vindicate their interests in some later, albeit more burdensome, litigation.") (quoting *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 910 (1977)).

*And last*, the district court's main premise for its holding— that "[t]he in-person dispensing requirement is not at issue in this case, and will neither be eliminated nor reinstated as a result of this litigation"—is also incorrect. 1-ER-007. The in-person dispensing requirement is *necessarily* at issue in Plaintiffs' case, and it will either remain eliminated or be reinstated as a result of the litigation. Because "[t]he effect of invalidating an agency rule is to reinstate the rule previously in force," Plaintiffs' APA challenge to the 2023 REMS puts the in-person dispensing requirement at issue. *See Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005).

*     *     *     *     *

State Intervenors have a right to vindicate their interests under the APA alongside Plaintiffs. Intervention here keeps with this Court's policy of construing Rule 24(a)

14

"liberally in favor of potential intervenors." *Lockyer*, 450 F.3d at 440 (citation omitted). The district court's holding breaks from that policy and needlessly undermines judicial economy and party advocacy.

**B. State Intervenors establish the remaining intervention factors.**

The district court made no findings on the other three intervention factors. Plaintiffs challenged each of them in varying degrees. But the remaining factors are easily met.

*Timeliness.* State Intervenors moved to intervene exactly three weeks after Plaintiffs filed their Amended Complaint, just five weeks after Plaintiffs commenced the action, and before the Federal Defendants answered and before the district court issued any scheduling order. Although Plaintiffs argued that State Intervenors' motion is untimely, they provided no caselaw in support and claimed no prejudice from any supposed delay. *See* 2-ER-019–20. Under this Court's caselaw, timeliness cannot seriously be contested. *See, e.g., Kalbers v. United States Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021) (intervention timely when filed "just a few weeks" after intervenor learned of need to intervene); *Los Angeles*, 288 F.3d at 398 (intervention timely when "filed only approximately one and half months after the suit was filed"); *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016) (Prejudice "is the most important consideration in deciding whether a motion for intervention is untimely.") (citation omitted).

*Impairment of Interest.* Once an intervenor shows a protectable interest, courts have "little difficulty concluding that the disposition of the case may, as a

practical matter, affect it." *Lockyer*, 450 F.3d at 442. As noted above, that is the case here. Plaintiffs are seeking to eliminate mifepristone's REMS altogether. State Intervenors are seeking to restore and strengthen mifepristone's REMS. If Plaintiffs prevail, State Intervenors' interests will be impaired. Put another way, "[t]he same evidence that bolsters the [existing Plaintiffs'] standing to sue also bolsters the case for intervention." *Id.*

*Inadequate Representation.* State Intervenors' interests are not, and will not, be adequately represented by the existing parties. "The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties." *Arakaki*, 324 F.3d at 1086, as amended (May 13, 2003) (citation omitted). Plaintiffs' interests do not align with State Intervenors' interests. That much is plain from the face of the Amended Complaint and State Intervenors' Complaint. *Compare* 2-ER-202–300 *with* 2-ER-072–137.

None of the existing parties "will undoubtedly" make all of State Intervenors' arguments. *See California v. Tahoe Reg'l Plan. Agency*, 792 F.2d 775, 778 (9th Cir. 1986). The Federal Defendants believe the FDA's action was lawful, and Plaintiffs want to eliminate mifepristone's REMS altogether.

The State Intervenors' burden here is "minimal." *Arakaki*, 324 F.3d at 1086. They've more than carried it, and intervention should be granted as of right.

**C. State Intervenors have standing to intervene.**

The Federal Defendants did not dispute that State Intervenors established the four factors discussed above. They instead opposed State Intervenors' motion on standing alone. They had presented the same standing arguments in opposition to Plaintiffs' preliminary injunction motion, and the district court had already rejected them. The district court did not find the standing arguments any more compelling against State Intervenors. To the extent the Federal Defendants try again before this Court, their arguments on standing should be rejected.

*Plaintiffs Provide State Intervenors With Standing.* The simplest reason standing is not an issue is because Plaintiffs have standing to challenge the 2023 mifepristone REMS under the APA, and only one plaintiff needs standing to provide a federal court with jurisdiction to decide a case or controversy. *See Massachusetts v. EPA*, 549 U.S. 497, 518 (2007) ("Only one of the petitioners needs to have standing to permit us to consider the petition for review."). This Court has consistently held that "once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others." *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993) (citation omitted).

This standing rule makes sense. Article III limits a court's power to decide "Cases" or "Controversies." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 438 (2017). Once one plaintiff presents the court with a case or controversy, Article III imposes no further barrier on judicial power to reach the dispute. *Id.* Standing relates to a federal court's power over disputes; it has nothing to do with a court's power over litigants,

which is instead a question of personal jurisdiction. The district court had standing to hear Plaintiffs' dispute over the 2023 REMS, so State Intervenors do not have to establish standing separately.

***The State Intervenors Have Independent Standing***. In any event, State Intervenors have shown their own standing. "[A] state may sue to assert its quasi-sovereign interests in the health and well-being . . . of its residents in general." *California v. Trump*, 963 F.3d 926, 936 (9th Cir. 2020) (citation omitted). A state's sovereign and quasi-sovereign interests are very different than the *parens patriae* interests that *Mellon* bars. *See Kentucky v. Biden*, 23 F.4th 585, 596-99 (6th Cir. 2022) (explaining the difference); *Oregon v. Legal Servs.*, 552 F.3d 965, 971 (9th Cir. 2009) (drawing same distinction). That is why this Court has previously recognized that States can bring APA claims to vindicate these interests. *See Natl. Res. Defense v. U.S.*, 542 F.3d 1235, 1249 n.8 (9th Cir. 2008).

Here, State Intervenors sued "to vindicate [their] own sovereign and quasi-sovereign interests against the United States." *Kentucky*, 23 F.4th at 596. The 2023 REMS deregulate mifepristone and make it more likely for State Intervenors' citizens to unlawfully or improperly obtain the drug. 2-ER-080–82 at ¶¶ 46-52. Plaintiffs' Amended Complaint confirms as much, alleging that eliminating mifepristone's REMS will reduce the risk of criminal and civil enforcement by bordering States, like Idaho and Texas. 2-ER-244–45, 270 at ¶¶ 130, 185. And deregulation will lead directly to citizen harm. 2-

ER-080–81 at ¶¶ 41-51. State Intervenors' sovereign and quasi-sovereign interests provide them with standing. *See Massachusetts*, 549 U.S. at 520; *Trump*, 963 F.3d at 936.

State Intervenors also alleged direct harm to their own economic interests traceable directly to the 2023 REMS, which alone provides standing. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.4 (9th Cir. 2013). For example, Idaho alleges that "[t]he increased risk to Idaho women and unborn children [from the REMS] will [cause] it to incur additional medical care expenses, including emergency care, some of which is borne by Idaho through Medicaid expenditures." 2-ER-082 at ¶ 54. Plaintiffs asserted the same economic harms tied to the 2023 REMS, and the district court held such harms conferred standing. 2-ER-042–43. The result cannot be any different for State Intervenors.

State Intervenors may generally allege injuries, and their generally alleged injuries are entitled to special solicitude. *Trump*, 963 F.3d at 936. At this stage, State Intervenors allege "a quintessential injury-in-fact." *Maya*, 658 F.3d at 1069.

## II. State Intervenors Should Also Be Allowed To Intervene Under Rule 24(b).

The district court's Rule 24(b) holding should also be reversed. Permissive intervention is appropriate where there is: "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (citation omitted). In a federal-question case, like this one, the jurisdictional requirement is only relevant "where a proposed intervenor seeks to bring new state-law claims." *Id.* State Intervenors do not propose bringing any state-law

claims, so the jurisdictional factor is not at issue. The motion is timely, and State Intervenors' APA claims are grounded in the same law and facts as Plaintiffs' action.

Despite that straightforward analysis, the district court denied permissive intervention. It held that State Intervenors' proposed claims did not, "in practical application," present any common question of law or fact with Plaintiffs' claims. 1-ER-008. The district court's conclusion, however, wrongly assumed that the difference in relief sought by State Intervenors compared with the relief sought by Plaintiffs destroyed any commonality of law or fact. But the bar is much lower: an intervenor satisfies the commonality requirement if his claims merely "relate to the subject matter of the action." *Greene v. United States*, 996 F.2d 973, 978 (9th Cir. 1993). He does not need to pursue his claims for the same reasons and hope for precisely the same outcome as the original plaintiff. *See Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989) (finding a common question existed where the district court's ruling for plaintiffs "went a long way toward answering" one of the questions posed by intervenor).

Moreover, State Intervenors' claims and Plaintiffs' action need only share "a" common question of law or fact—there is no requirement of complete identity up and down the pleadings. *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (citation omitted). The parties' APA challenges to the 2023 REMS present at least one common question of law or fact. So even under the district court's mistaken view, the commonality factor was satisfied. The bottom line is that the district court's commonality analysis is unduly restrictive. That much would be obvious for Rule 20 or 23

20

purposes, and it should be just as plain for Rule 24 purposes. 7C Wright & Miller, *supra*, § 1911 ("The concept of a common question of law or fact is one that appears in a number of the rules in addition to Rule 24(b). It has not been a difficult concept to apply in other contexts and it should not be here.").

The only other basis the district court provided for denying intervention was that it "would cause additional delay in this complex litigation." 1-ER-008. That cursory conclusion piggybacks on the district court's erroneous holding that there are no common questions. So that reason cannot serve as grounds to deny intervention. And without any other explanation, this Court cannot guess at the basis for the district court's discretion. *See Traxler v. Multnomah County*, 596 F.3d 1007, 1015-16 (9th Cir. 2010) ("[M]eaningful appellate review for abuse of discretion is foreclosed when the district court fails to articulate its reasoning.") (citation omitted).

State Intervenors' participation poses no danger of prejudice to Plaintiffs or the Federal Defendants. Their participation will, however, "significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *See Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). The district court's stingy approach should be corrected.

## CONCLUSION

For the foregoing reasons, the district court's order denying State Intervenors' motion to intervene should be reversed.

Respectfully Submitted,

HON. RAÚL R. LABRADOR
ATTORNEY GENERAL

Date: August 7, 2023

*/s/ Joshua N. Turner*
Joshua N. Turner (ID 12193)
DEPUTY SOLICITOR GENERAL
Idaho Attorney General's Office
Statehouse, Room 210
Boise, ID 83720
(208) 334-2400
josh.turner@ag.idaho.gov

*Attorneys for Appellants*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32 (a)(7)(C), and Ninth Circuit Rule 32-1, I certify that the attached response brief is proportionately spaced, has a typeface of 14 points or more, and contains 5,072 words.


Date: August 7, 2023                              */s/ Joshua N. Turner*
                                                  Joshua N. Turner

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, counsel for Appellants is aware of no related cases pending before this Court.

Date: August 7, 2023

*/s/ Joshua N. Turner*
Joshua N. Turner

## CERTIFICATE OF SERVICE

I certify that on August 7, 2023, I electronically filed Appellants' Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: August 7, 2023                    */s/ Joshua N. Turner*
                                        Joshua N. Turner