No. 23-35294

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STATE OF WASHINGTON, *et al.*,

*Plaintiffs-Appellees*,

*v.*

UNITED STATES FOOD AND DRUG ADMINISTRATION, *et al.*,

*Defendants-Appellees,*

*v.*

STATE OF IDAHO, *et al.*,

*Movants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of Washington

No. 1:23-cv-03026-TOR
The Honorable Thomas O. Rice

## REPLY BRIEF OF APPELLANTS

RAÚL R. LABRADOR
  *Attorney General*

Idaho Office of the
Attorney General
700 W. Jefferson St.
Suite 210
Boise, ID 83720
(208) 334-2400
josh.turner@ag.idaho.gov
jack.corkery@ag.idaho.gov

JOSHUA N. TURNER
  *Acting Solicitor General*

SEAN M. CORKERY
  *Assistant Solicitor General*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

REPLY ........................................................................................................................ 1

   I. The Federal Defendants Are Wrong On Standing—State Intervenors
      Plainly Have Standing To Intervene ........................................................... 2

   II. Plaintiffs Are Wrong On Rule 24(a)(2)—State Intervenors Have
       A Right To Intervene ..................................................................................... 8

   III. State Intervenors Should Also Be Allowed To Intervene
        Under Rule 24(b) ........................................................................................ 12

CONCLUSION ......................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**

*Arakaki v. Cayetano*,
 324 F.3d 1078 (9th Cir. 2003) ............................................................................ 1

*Bond v. United States*,
 564 U.S. 211 (2011) ............................................................................................ 5

*California v. Azar*,
 911 F.3d 558 (9th Cir. 2018) .............................................................................. 7

*California v. Trump*,
 963 F.3d 926 (9th Cir. 2020) .............................................................................. 7

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
 647 F.3d 893 (9th Cir. 2011) ............................................................................ 11

*Haaland v. Brackeen*,
 599 U.S. 255 (2023) ............................................................................................ 6

*Hinojos v. Kohl's Corp.*,
 718 F.3d 1098 (9th Cir. 2013) ............................................................................ 7

*Kentucky v. Biden*,
 23 F.4th 585 (6th Cir. 2022) ........................................................................... 5, 6

*Leonard v. Clark*,
 12 F.3d 885 (9th Cir. 1993) ................................................................................ 3

*Massachusetts v. E.P.A.*,
 549 U.S. 497 (2007) ............................................................................................ 5

*Massachusetts v. Mellon*,
 262 U.S. 447 (1923) ............................................................................................ 6

*Maya v. Centex Corp.*,
 658 F.3d 1060 (9th Cir. 2011) ......................................................................... 2, 8

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*,
 145 F.3d 1399 (D.C. Cir. 1998) ....................................................................... 11

*Nat'l Res. Def. Council v. U.S.*,
 542 F.3d 1235 (9th Cir. 2008) ............................................................................ 6

*Nat'l Urb. League v. Ross*,
 977 F.3d 770 (9th Cir. 2020) .............................................................................. 4

*Oregon v. Legal Servs. Corp.*,
 552 F.3d 965 (9th Cir. 2009) .............................................................................. 5

*Organized Vill. of Kake v. U.S. Dep't of Agric.*,
   795 F.3d 956 (9th Cir. 2015) ............................................................................. 4, 10

*S. Cal. Edison Co. v. Lynch*,
   307 F.3d 794 (9th Cir. 2002) .................................................................................8, 9

*Sw. Ctr. for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001) ...................................................................................10

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
   581 U.S. 433 (2017) ..................................................................................... 2, 3, 4

*Trump v. Int'l Refugee Assistance Project*,
   582 U.S. 571 (2017) .................................................................................................4

*United States v. Alisal Water Corp.*,
   370 F.3d 915 (9th Cir. 2004) .....................................................................................9

*United States v. City of L.A.*,
   288 F.3d 391 (9th Cir. 2002) ...................................................................................11

*United States v. Oregon*,
   839 F.2d 635 (9th Cir. 1988) ...................................................................................11

*United States v. Texas*,
   599 U.S. 670 (2023) ..................................................................................................6

*Wilderness Soc. v. U.S Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) .................................................................................11

## REPLY

The district court's intervention analysis veered from this Court's Rule 24 precedents in several concerning respects. It turned Rule 24's liberal and practical inquiry into a narrow and technical bar. It injected uncertainty into Rule 24's otherwise straightforward text and application. And its circumscribed definition of a protectable interest has not only denied State Intervenors their right under the Rules, but it also threatens to force parties to inefficiently multiply litigation to protect their legal interests. All of that is bad law and bad policy.

In their responses, Plaintiffs and the Federal Defendants try to oppose intervention on different grounds, but each ends up undermining the other. The Federal Defendants argue that State Intervenors lack standing to intervene, but Plaintiffs avoid that argument like the plague because their own standing depends on the same injuries alleged by State Intervenors. Indeed, Plaintiffs and State Intervenors alike have standing. Similarly, Plaintiffs argue that State Intervenors failed to meet Rule 24's requirements, but Federal Defendants noticeably do not join them in their untenable claims. For good reason. This Court's Rule 24 precedents are clear enough that Federal Defendants found no basis to argue against intervention on the merits.

This is not a marginal case where reasonable minds could differ. Rule 24 intervention should have been granted—with or without a "liberal construction in favor of applicants." *See Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). Remand is warranted.

1

## I. The Federal Defendants Are Wrong On Standing—State Intervenors Plainly Have Standing To Intervene.

Standing here is straightforward. State Intervenors allege that the 2023 REMS have injured their pocketbooks, their law-enforcement interests, and the well-being of their citizens, both born and unborn. *See* 2-ER-080 to -088. Any one of those allegations of direct injury alone satisfies the standing requirement at this early stage. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). And while State Intervenors' allegations easily provide standing for themselves, Plaintiffs' standing to bring the same APA claim that State Intervenors seek to bring makes a separate standing showing unnecessary.

The Federal Defendants offer three objections to standing, but none gets the law right. The Federal Defendants first say that State Intervenors cannot rely on Plaintiffs' standing because State Intervenors are seeking different relief from Plaintiffs. Dkt. #32 at 9-11. They contend that *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017), "is squarely at odds with" Plaintiffs' standing extending to State Intervenors' APA claims. Dkt. #32 at 10. But *Town of Chester* helps, not hurts, the case for standing here.

There, the Court held that "[f]or all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right." *Town of Chester*, 581 U.S. at 439. Applying that well-established principle here means that State Intervenors need to demonstrate Article III standing

2

separately *only* if they are seeking "additional relief beyond that which" Plaintiffs have requested. *See id.* The relevant pleadings demonstrate that State Intervenors are not seeking additional relief and instead are seeking a *subset* of the *same* relief that Plaintiffs have already requested. Consider Plaintiffs' Amended Complaint, which challenges the 2023 REMS as unlawful under the APA. 2-ER-289-290 ¶¶ 257-66. So too does State Intervenors' proposed complaint. 2-ER-089-090 ¶¶ 97-107. Consider also that Plaintiffs' Amended Complaint requests the district court to "hold unlawful and set aside" the 2023 REMS. 2-ER-289 ¶ 259; *see also* 2-ER-055 (noting that Plaintiffs seek to enjoin the "2023 REMS" in addition to enjoining the "REMS entirely"). Again, so does State Intervenors' proposed complaint. 2-ER-090 ¶ 104. These allegations are "the best evidence of the relief [Plaintiffs] seek[]." *Town of Chester*, 581 U.S. at 440. Thus, because Plaintiffs have standing to challenge the 2023 REMS and seek their vacatur, this Court "need not decide the standing of [State Intervenors]" who raised the same challenge to the same agency action and request the same relief. *See Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993).

But the Federal Defendants think that rule is inapplicable because State Intervenors seek relief that stops short of the full relief sought by Plaintiffs. The Federal Defendants argue that because Plaintiffs' goal is to eliminate any and all mifepristone REMS, State Intervenors are seeking relief that is "fundamentally different" from the relief Plaintiffs seek and therefore "the district court lacks jurisdiction to grant such relief." Dkt. #32 at 16. That argument, however, is wrong on at least two levels. One,

3

although the Federal Defendants may be correct about Plaintiffs' aim, that does not change the fact that Plaintiffs cannot wish remedies into reality. The legal relief that is available if Plaintiffs succeed on their APA claim "is to reinstate the rule previously in force." *See Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 970 (9th Cir. 2015) (en banc). That is the only relief available to Plaintiffs, even if they would prefer otherwise. *See Nat'l Urb. League v. Ross*, 977 F.3d 770, 780 (9th Cir. 2020) (reversing district court's injunction to the extent it refused to reinstate the agency's prior rule). And that is the same relief State Intervenors seek.

Two, even if Plaintiffs may seek more relief than what the APA offers and ask the district court to enjoin the Federal Defendants from enforcing any REMS whatsoever, the district court nevertheless "need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017). That less-than-total relief here could simply be standard vacatur, so the Federal Defendants are just plain wrong that the district court lacks jurisdiction to grant the relief State Intervenors are seeking.

The sum of this is that under *Town of Chester*, State Intervenors are not seeking "additional relief beyond" what Plaintiffs seek. *Town of Chester*, 581 U.S. at 439. They are seeking the *same* relief as Plaintiffs can legally seek under the APA. And just because they are seeking *less* relief than Plaintiffs hope to obtain in no way prevents the district court from granting that narrower, more appropriate relief, which means the district court has jurisdiction to adjudicate State Intervenors APA claims as well.

The Court could stop there on standing. But State Intervenors also have no trouble establishing their own, independent standing. On that front, the Federal Defendants' arguments only get weaker. They begin by confusing distinct concepts of standing and arguing that State Intervenors are asserting *parens patriae* standing on behalf of their citizens. Dkt. #32 at 16-18 (mischaracterizing State Intervenors' "theory" of standing as the right "to assert the interests of their residents"). Not so. State Intervenors assert their *own* sovereign and quasi-sovereign interests, which is very different than *vicariously* asserting an interest that belongs only to their citizens. *See Kentucky v. Biden*, 23 F.4th 585, 596-99 (6th Cir. 2022) (explaining the difference); *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 971 (9th Cir. 2009), *abrogated on other grounds by Bond v. United States*, 564 U.S. 211 (2011) (drawing same distinction).

State Intervenors' "sovereign-and-quasi-sovereign-interest theories" do not rest "on impermissible notions of third-party standing in which a state asserts in a purely vicarious manner the interests of its citizens." *Kentucky*, 23 F.4th at 599. They instead assert classic state interests in the health and well-being of pregnant women and unborn children in their territories. To be clear, State Intervenors are not suing for the specific harms mifepristone will inflict on pregnant women and unborn children. State Intervenors are simply asserting their "traditional prerogative to superintend their citizens' health and safety." *Id.* These same interests also entitle them to "special solicitude" for standing purposes. *Massachusetts v. E.P.A.*, 549 U.S. 497, 520 (2007). And as this Court has previously recognized, States may bring APA claims to vindicate their

5

quasi-sovereign interests. *See Nat'l Res. Def. Council v. U.S.*, 542 F.3d 1235, 1248 n.8 (9th Cir. 2008). States' interest in protecting their citizens from unsafe pharmaceuticals that are being made available within their borders is not unlike their interests in protecting the public from other nuisances such as air or water pollution. *See id.*

The Federal Defendants argue that the Supreme Court's recent decision in *Haaland v. Brackeen*, 599 U.S. 255 (2023), supports their standing points, but it does not. That decision stands for the unremarkable rule that a State may not bring claims "on behalf of its citizens." *Id.* at 294. The Court disallowed Texas from asserting an equal protection claim against the federal government because that claim belonged to its citizens. *Id.* In other words, the *Haaland* decision merely applied the bar against third-party *parens patriae* suits, sometimes referred to as the *Mellon* bar. *See Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923). But that is *not* what State Intervenors are doing here. They assert injury to their own quasi-sovereign interests. *See Kentucky*, 23 F.4th at 596 (explaining that this "more modern conception of *parens patriae* . . . generally is permissible").

That leaves the Federal Defendants' weakest argument against standing, which it has buried last. Dkt. #32 at 18-19. They say that State Intervenors' alleged economic injury has been foreclosed by the Supreme Court's recent decision in *United States v. Texas*, 599 U.S. 670 (2023). But here again, the Federal Defendants overstate and badly misapply the case. The Supreme Court found standing lacking because the alleged injury was not redressable by federal courts—holding that courts cannot direct how the

6

federal government exercises its enforcement discretion over whether to arrest or prosecute. *Id.* at 677. The Court nowhere held that the claimed economic injuries were too speculative or lacked Article III status. In fact, the Court said just the opposite: "Monetary costs are of course an injury." *Id.* at 676. That should settle the question.

The Federal Defendants are also wrong that State Intervenors' economic injuries are too attenuated. They are the same economic injuries that the district court held conferred standing on Plaintiffs. *See* 2-ER-043.[1] Moreover, this Court recently affirmed a nearly identical theory of standing. *See California v. Azar*, 911 F.3d 558 (9th Cir. 2018). Like the Federal Defendants here, the agency in *Azar* argued that the economic injuries were too attenuated and speculative. But the Court held that "the states have shown that the threat to their economic interest is reasonably probable." *Id.* at 573. And even though a causal chain was involved, this Court made clear that "[j]ust because a causal chain links the states to the harm does not foreclose standing." *Id.* at 571.

State Intervenors need only generally allege injuries, and their generally alleged injuries are entitled to special solicitude. *California v. Trump*, 963 F.3d 926, 936 (9th Cir. 2020). At this stage, "allegations of economic injury suffice," full stop. *Hinojos v. Kohl's*

---

[1] The Federal Defendants say it is "unclear" whether the district court found that the Plaintiffs had standing based on their Medicaid costs, *see* Dkt. #32 at 18 n.2, but the district court's order is clear. The court recited the same harm on which State Intervenors rely and held that "Plaintiffs have shown a reasonably probable threat to their economic interests in the form of unrecoverable costs that are fairly traceable to the 2023 REMS[.]" 2-ER-043. And the district court even cited *Azar*, 911 F.3d 558, noting the injury to the state resulting from medical-cost reimbursements. That is the same injury alleged by both Plaintiffs and State Intervenors.

*Corp.*, 718 F.3d 1098, 1104 n.4 (9th Cir. 2013). And the economic injury State Intervenors allege is "a quintessential injury-in-fact." *Maya*, 658 F.3d at 1069. Even though it is unnecessary, State Intervenors have alleged sufficient facts to establish their own standing.

## II. Plaintiffs Are Wrong On Rule 24(a)(2)—State Intervenors Have A Right To Intervene.

Plaintiffs do not contest State Intervenors' standing. They instead argue only that State Intervenors do not have a protectable interest that would be impaired by this lawsuit and that in any event the Federal Defendants will adequately represent any interests State Intervenors have. The law says otherwise, particularly on that last point.

As to the protectable interest requirement, Plaintiffs contend that State Intervenors' interest is too generalized to be protectable under some law. That is nonsense. State Intervenors have alleged the same APA claims as Plaintiffs, and surely Plaintiffs aren't contending that the interests they seek to vindicate lack protection under some law. Indeed, State Intervenors' interest could hardly be more specific here. They challenge the 2023 REMS as unlawful under the APA, just like Plaintiffs have. And they claim direct injuries resulting from the 2023 REMS, just like Plaintiffs have.

Still, Plaintiffs claim that State Intervenors merely have "an undifferentiated, generalized interest in the outcome" of this litigation. Dkt. #34 at 22 (citing *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002)). In *Lynch*, that was true of a third-party trade association that tried to intervene and challenge a stipulated settlement

agreement between a public utility and state commissioners. *Lynch*, 307 F.3d at 803. The trade association lacked any protectable interest in the terms of the settlement, and the Court disallowed intervention based solely on the trade association's members' interest in how the outcome of the action would impact their utility rates. *Id.* But here, State Intervenors have asserted a specific interest—safe, effective, and lawful mifepristone REMS—that is protectable under a specific federal statute—the APA. Their interest is plainly protectable. *See United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

Plaintiffs next contend that State Intervenors' interest is not related to their litigation against the Federal Defendants. *See* Dkt. #34 at 26-31. Plaintiffs even go so far as to claim that State Intervenors "seek to challenge an entirely different agency action." *Id.* at 28. That is an alarming assertion. The sole basis for Plaintiffs' challenge—and the only reason they aren't barred by the APA's six-year statute of limitations—is the Federal Defendants' final agency action implementing the 2023 REMS. State Intervenors challenge the same agency action.

To the extent Plaintiffs are arguing that State Intervenors' challenge regarding the in-person dispensing requirement is unrelated to their case, they are wrong. Plaintiffs are challenging an agency action that removed the in-person dispensing requirement. If they prevail on their APA claim, then the default rule is that the prior REMS (with the in-person dispensing requirement) would be reinstated. *See Organized*

9

*Vill. of Kake*, 795 F.3d at 970. And any ability of Plaintiffs to seek different relief does not make the in-person dispensing requirement irrelevant.

At the end of the day, the relation between State Intervenors' interest and Plaintiffs' challenge is plain. Both State Intervenors and Plaintiffs are seeking to invalidate the 2023 REMS under the APA. If they prevail, the court will need to decide what mifepristone REMS govern. And on that question, the prior REMS makes the in-person dispensing requirement indisputably part of the equation, and State Intervenors are not "commandeering" Plaintiffs' lawsuit by advocating for the default rule upon vacatur.

As to impairment, Plaintiffs say State Intervenors cannot show the outcome of the litigation will impair their interests because State Intervenors can still enforce their laws without impairment. *See* Dkt. #34 at 32. That isn't true, but it also doesn't bear on the question. Yes, State Intervenors have an interest in being able to effectively enforce their laws, and yes, the 2023 REMS undermine that ability. That much is alleged in the proposed complaint and must be taken as true. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001). But more fundamentally, State Intervenors' interest in safe, effective, and lawful mifepristone REMS *will* be squarely impacted by the outcome of this case. Plaintiffs do not dispute that if they receive all that they are seeking, then mifepristone will not be subject to an in-person dispensing requirement. And because the invalidation of a regulation applies to all regulated parties, State Intervenors'

10

interests are necessarily impaired. *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998).

Plaintiffs respond that State Intervenors can just go file their own lawsuit and protect their interests there. But that view discounts the effect of judgment here—an important point Plaintiffs fail to substantively address. *See United States v. Oregon*, 839 F.2d 635, 639 (9th Cir. 1988). Here, it isn't difficult to see that the outcome of this litigation may impair or impede State Intervenors' interest. Plaintiffs' go-file-your-own-lawsuit answer also disregards Rule 24's well-recognized purpose to promote the "efficient resolution of issues." *Wilderness Soc. v. U.S Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011). This is why Rule 24 is liberally construed "in favor of intervention." *Id*. Intervention exists to "prevent or simplify future litigation involving related issues." *United States v. City of L.A.*, 288 F.3d 391, 398 (9th Cir. 2002). But Plaintiffs turn this purpose on its head and ask this Court to deny intervention so that litigation can be multiplied. State Intervenors have met the impairment showing, which is particularly low once a court finds a party has a protectable interest. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (noting the that courts have "little difficulty concluding that the disposition of th[e] case may, as a practical matter, affect" a protectable interest).

Last, Plaintiffs' claim that the Federal Defendants adequately represent State Intervenors' interests. That is a mighty odd position to take given State Intervenors are

11

proposing to sue the Federal Defendants. Needless to say, a party who an intervenor proposes to sue will not adequately represent the intervenor's interests.

The district court misapplied Rule 24(a), and State Intervenor's motion to intervene as of right should have been granted.

## III. State Intervenors Should Also Be Allowed To Intervene Under Rule 24(b).

Plaintiffs' response regarding permissive intervention repeats the same incorrect premise that State Intervenors are injecting new and unrelated claims into the case. The key point here is that State Intervenors' proposed claims share a common question of law and fact with Plaintiffs' claims. And Plaintiffs do not claim that intervention poses them or their case any delay or prejudice.

Plaintiffs instead stress the district court's discretion, which it certainly has under Rule 24(b). But discretion cannot cover unreasoned and erroneous judgment. Here, the district court mistakenly held that State Intervenors' proposed claims lacked any common question of law or fact with the underlying case. That legal error led the district court to abuse its discretion. It should be reversed under Rule 24(b) as well.

## Conclusion

For the foregoing reasons, the district court's order denying State Intervenors' motion to intervene should be reversed.

Respectfully Submitted,

                                 HON. RAÚL R. LABRADOR
                                 ATTORNEY GENERAL

Date: November 30, 2023         */s/ Joshua N. Turner*
                                 Joshua N. Turner (ID 12193)
                                 ACTING SOLICITOR GENERAL
                                 Idaho Attorney General's Office
                                 Statehouse, Room 210
                                 Boise, ID 83720
                                 (208) 334-2400
                                 josh.turner@ag.idaho.gov

                                 *Attorneys for Appellants*

## CERTIFICATE OF COMPLIANCE

9th Circuit Case No.:  23-35294

I am the attorney representing Appellants.

**This brief contains 3,115 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

Date: November 30, 2023        */s/ Joshua N. Turner*
                                                    Joshua N. Turner

## CERTIFICATE OF SERVICE

I certify that on November 30, 2023, I electronically filed Appellants' Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: November 30, 2023    /s/ *Joshua N. Turner*
                          Joshua N. Turner